NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------X
In Re:

DEREK K. BROCK & TANIKA R. BROCK,

           Debtors.
------------------------------------------------------X

DENYSE RIDLEY,
           Plaintiff,
v.

DEREK K. BROCK,
           Defendant.
------------------------------------------------------X

CHAPTER 7

CASE NO. 15-31274

ADV. NO. 15-2457

JUDGE: JERROLD N. POSLUSNY, JR.

**OPINION**

FILED
JAMES J. WALDRON, CLERK
MAR 2 5 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY _____ DEPUTY

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

## INTRODUCTION

Before the Court is Plaintiff Denyse Ridley's request to Enter Default Judgment in her adversary proceeding against Debtor/Defendant Derek K. Brock. The Court will enter the default judgment. However, before doing so, the Court finds it necessary to address a potential jurisdictional issue caused by the application of 28 U.S.C. § 157(b)(5).

## DISCUSSION

The Plaintiff alleges in her Adversary Complaint that the Debtor violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-2 *et seq.* ("LAD"), the Conscientious Employees Protection Act, N.J.S.A. 34:19-1 *et seq.* ("CEPA"), and New Jersey public policy,[1] and that those

---

[1] The Court is unsure that, by itself, a "common law violation of New Jersey public policy" is a cognizable cause of action. However, because the claim involves the same facts as the coinciding employment discrimination and sexual harassment claims, the Court will assume that the analysis applied to the latter two claims is likely applicable to the Plaintiff's public policy claims.

violations fall under the "willful and malicious tort" exception to discharge under § 523(a)(6) of the Bankruptcy Code. The Plaintiff asserts that she was subject to various acts of employment discrimination and sexual harassment committed by the Debtor, including making obscene gestures toward her and sending her lewd text messages. The Debtor has not responded to the Complaint, resulting in the Clerk's entry of default on January 8, 2016. The Plaintiff now asks this Court to enter Default Judgment and determine that any amount of damages awarded is nondischargeable.

It is well settled that federal courts—typically bankruptcy courts—have exclusive jurisdiction over dischargeability proceedings under Bankruptcy Code § 523(a)(6). See, e.g., Grogan v. Garner, 498 U.S. 279, 284 (1991) ("Since 1970 . . . the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code."); In re Tulloch, 373 B.R. 370, 38 n. 6 (Bankr. D.N.J. 2007); In re Hawkins, 231 B.R. 222, 231 (Bankr. D.N.J. 1999). However, the Court questions whether it has the authority to enter judgment regarding the underlying employment discrimination and sexual harassment claims. Title 28 of the United States Code, Section 157(b)(5) requires the district court to "order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). This Statute raises two issues for the Court to address: (1) whether the underlying causes of action are personal injury torts, and (2) if so, whether this Court can enter default judgment on personal injury tort claims.

**(1) Are the underlying employment discrimination and sexual harassment claims "personal injury torts" for the purposes of applying 28 U.S.C. § 157(b)(5)?**

This Court is not aware of any case within our circuit or district that addresses this issue, but multiple courts have held—based on applicable state laws—that employment discrimination and sexual harassment are "personal injury torts" under the Statute. See, e.g., In re Ice Cream

1

Liquidation, Inc., 281 B.R. 154, 162-64 (Bankr. D. Conn. 2002) (finding employment discrimination based on sex to be a personal injury tort); In re Mason, 514 B.R. 852, 858-60 (Bankr. E.D. Ky. 2014) (concluding that a sexual harassment claim is a personal injury tort). For example, the court in Mason noted that "personal injury" does not only include "bodily injury," but also "any invasion of a personal right . . . ." Mason, 514 B.R. at 859 (citations omitted). One bankruptcy judge in New Jersey generally acknowledged that "damages to an individual's person and any invasion of personal rights tends to define 'personal injury torts.'" In re Santos, 304 B.R. 639, 649 (Bankr. D.N.J. 2004) (emphasis added; marks omitted) (Stern, J.).

Moreover, it appears the New Jersey Supreme Court would agree that violations of the LAD such as those alleged in the present matter would be considered personal injury tort claims. For example, the New Jersey Supreme Court has held that claims under the LAD should come with the same two year statute of limitations as personal injury claims. Montells v. Haynes, 133 N.J. 282, 291-92, 627 A.2d 654, 659 (N.J. 1993). The New Jersey Supreme Court largely based its decision on the fact that LAD injuries include economic time and loss, physical and emotional distress, severe emotional or physical trauma, anxiety, and career disruption—most of which would be governed by the personal injury statute of limitations. Id. at 292, 627 A.2d at 658.

Accordingly, it seems the Plaintiff's LAD and CEPA claims fall under the purview of 28 U.S.C. § 157(b)(5).

**(2) Is the Bankruptcy Court is precluded from entering default judgment on the underlying personal injury tort claims?**

In the past, the majority view was that 28 U.S.C. § 157(b)(5) is jurisdictional in nature and that the Statute entirely divested bankruptcy courts of subject matter jurisdiction over "personal injury tort" claims. See In re Arnold, 407 B.R. 849, 853-54 (Bankr. M.D.N.C. 2009) (collecting cases). However, in Stern v. Marshall, the Supreme Court held that the Statute is not jurisdictional in nature. Stern v. Marshall, 131 S. Ct. 2594, 2606-07 (2011). The Stern Court

2

concluded that personal injury tort claims can be resolved by the bankruptcy court if the court has the consent of the parties involved. Id.[2]

After the Stern decision, the Bankruptcy Court for the Southern District of New York determined that consent to a bankruptcy court's adjudication of a Stern claim[3] need not be explicit. In re Oldco M Corp., 484 B.R. 598, 614-15 (Bankr. S.D.N.Y. 2012). The court reasoned:

> Where a summons and complaint have been properly served and the defendant has failed to respond, the Court concludes that the defendant's actions, or lack thereof, (1) serve as an admission of the material allegations of the complaint except as to the amount of damages . . . and (2) <u>constitute implied consent to the entry of a default judgment by a bankruptcy judge</u>. The answer is the same whether the claims asserted in the adversary complaint are core, non-core, or core but for which only an Article III judge may enter a final order or judgment consistent with the U.S. Constitution absent consent.

Id. (emphasis added).

Granted, the Oldco decision preceded the well-known Wellness decision, in which the Supreme Court provided clarification regarding implied consent to a bankruptcy court's jurisdiction. See Wellness Intern. Network, Ltd. V. Sharif, 135 S. Ct. 1932, 1948 (2015). The Wellness Court held that while implied consent is acceptable and promotes judicial efficiency, such consent must still be "knowing and voluntary." Id. As the Supreme Court explained,

---

[2] The Stern Court did not elaborate upon which claims constitute personal injury tort claims because doing so was unnecessary in its case once the Court found that the defendant had consented to having the bankruptcy court resolve the underlying claim. Stern, 131 S. Ct. at 2606-07.

[3] The phrase, "Stern claim," is a general reference to a claim upon which the bankruptcy court is constitutionally barred from entering a final judgment absent consent of the parties. Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2167 (2014). Whether the bankruptcy court cannot finally adjudicate a claim for constitutional reasons, by the application of 28 U.S.C. § 157(b)(5), or some combination of both, the same analysis regarding consent should apply. See Stern, 131 S. Ct. at 2606 (agreeing with the plaintiff's argument that "a party may waive or forfeit any objections under § 157(b)(5), in the same way that a party may waive or forfeit an objection to the bankruptcy court finally resolving a non-core claim").

consent is "knowing and voluntary" where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." Id. (internal quotations and citations omitted).

Though this language seems to indicate that unresponsiveness would not constitute "knowing and voluntary" implied consent, at least one court, post-Wellness, has adopted the reasoning of Oldco. See In re Hoku Corp., 2015 WL 8488949, *1-3 (Bankr. D. Idaho Dec. 10, 2015). In Hoku, the summons contained an explicit disclaimer that any failure to respond would be construed as the defendant's consent to the entry of a judgment by the bankruptcy court, and the court ultimately decided that the defendant's legal right to an Article III judge was sufficiently protected by such a clear warning that silence would constitute consent. Id. at *2. The Hoku Court distinguished Wellness from those instances in which a defendant fails to respond entirely because, in Wellness, the defendant had appeared and litigated the matter yet failed to raise a Stern argument. Id. at *2. As the court in Hoku explained, "Wellness explored the manner in which a litigating party might waive its right to an Article III judge; the Court did not discuss how that right might be forfeited by failure to appear and defend at all." Id. at *3 (emphasis added). Because the summons in Hoku was properly served and unequivocally explained that the failure to respond would potentially result in a judgment being entered by the bankruptcy court, the court concluded that the defendant's failure to appear and defend could be presumed to satisfy the Wellness standard. Id.

Moreover, there are safeguards in place in the event that a defendant suddenly decides to defend its rights. As the Hoku court noted, if a defendant later decides it deserved an Article III judge's rubber-stamping of the default judgment, he can seek relief from the judgment under Rule 55(c) and move to withdraw the reference so that the district court can hear his arguments. Id.

4

This Court agrees with the reasoning in Hoku and will enter default judgment in the present case. Just as in Hoku, the summons in the present case contains an unequivocal and fair warning that reads, "IF YOU FALL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT." See Summons, Adv. No. 15-2457, Dkt. No. 2.

Accordingly, construing the Debtor's failure to respond as consent to the Bankruptcy Court's authority to enter default judgment is the most practical result. This comports with the need for judicial efficiency noted in Wellness. Wellness, 135 S. Ct. at 1948. Entering Default Judgment avoids unnecessary procedural hurdles such as the Plaintiff needing to move to withdraw the reference simply to have the district court enter the default judgment. Additionally, it avoids a rather awkward interpretation of Wellness—that a defendant who actually litigates his case can somehow waive his right to an Article III judge by failing to raise a Stern objection, but a defendant who is completely unresponsive somehow maintains his right to an Article III judge.[4]

## CONCLUSION

The Court will enter Default Judgment in favor of the Plaintiff in accordance with this Opinion.

Dated:  May 25, 2016

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE

---

[4] This anomaly was noted in a recent American Bankruptcy Institute Journal article. See Kirk S. Cheney & Risa Lynn Wolf-Smith, *Inaction as Implied Consent*, 35-MAR AM. BANKR. INST. J. 20, 21 (2016).

5